IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

DEBORAH D. WILSON,

    Plaintiff,

V.                                        CIVIL ACTION NO. 3:04-0454

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

## **FINDINGS AND RECOMMENDATION**

        In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff protectively filed her applications on October 18, 2002, alleging disability commencing October 18, 2002, as a consequence of bronchial asthma, hypertension, swelling, anemia and heart damage. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was thirty-nine years of age and had obtained a high school education and graduated from nursing school. Her past relevant employment experience consisted of work as a licensed practical nurse. In his decision, the administrative law judge determined that plaintiff suffers from chronic obstructive pulmonary disease, obesity, major depressive disorder, dysthymia, and anxiety disorder," impairments he found severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge determined that she had the residual functional capacity for a limited range of sedentary level work. On the basis of this finding, and relying on Rule 201.28 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that the Commissioner's decision is supported by substantial evidence. Plaintiff reported that asthma and chronic obstructive pulmonary disease are her most limiting medical problems. She utilizes several different medications for breathing as well as using a nebulizer three times per day, ten minutes each time. Even with this regimen, plaintiff still experiences asthma attacks an average of once per month, lasting twenty to twenty-five minutes each. Despite her pulmonary problems and her doctor's admonitions to stop, plaintiff has continued to smoke.

Plaintiff also has hypertension which has been very hard to bring under control. She testified that medication keeps her blood pressure under control, "as long as I take [it]." Dr. David

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

Ayers, plaintiff's treating physician, has also prescribed medication for depression and anxiety, although plaintiff has had no continuing mental health treatment.

The medical evidence reflects hospitalizations in September 2001 and November 2002 for exacerbation of asthma. Though plaintiff was prescribed medications by Dr. Ayers when discharged after the first hospitalization, he noted when he saw her in November of 2002 that she had not been back to him for treatment and that she was not taking any ongoing medications. Shortly after this second hospitalization, Dr. Ayers wrote a short letter in which he related that plaintiff was having some "serious" health problems, consisting of severe hypertension, asthma and anemia, and he felt she would be totally disabled "for at least twelve months."

Dr. Ayers' notes reflect that when he next saw plaintiff on December 4, 2002, she reported her breathing had been better until the previous day. Exam revealed only "mild" wheezes in the lungs. Her blood pressure was still elevated but Dr. Ayers noted she took her blood pressure medication "when she remember[ed] to." Three months later, plaintiff came for a check-up reporting she could not sleep, was crying and thinking about suicide. The next day, March 8, 2003, Dr. Ayers completed assessments of both physical and mental residual functional capacity. It was his opinion that plaintiff could lift only ten pounds occasionally; was limited in standing and walking, although he did not specify to what degree; would be limited in postural activities, but again with no degree specified; and, would be precluded from working in certain environments, although which ones was not clear. His reasoning for these limitations was that plaintiff was weak due to asthma and anemia.

In terms of mental limitations, Dr. Ayers found that plaintiff had "no useful ability to function" in any area related to making occupational, performance or personal/social adjustments,

3

except that her ability to maintain personal appearance was "poor" (seriously limited but not precluded) and her ability to understand, remember and carry out simple job instructions would be "fair" (limited but satisfactory). Comments made on this form indicate plaintiff was "currently" distracted and overcome by physical and emotional problems. Dr. Ayers did indicate that he felt plaintiff would recover and, when she did, "she should do well." A report from August of 2003 reflects plaintiff's complaints of increased shortness of breath, chest pain, poor sleep and irritability. She was tearful on exam with poor eye contact and displayed inspiratory and expiratory wheezing. She was given a trial of antidepressant medication and referred to the Prestera Center where she went a few times but received no real help, according to her testimony.

On September 25, 2003, approximately six and one-half months after Dr. Ayers completed the physical and mental residual functional capacity assessments, he wrote a note to plaintiff's attorney in which he related that plaintiff's overall health was still not good with the biggest issue being her asthma/chronic obstructive pulmonary disease and continued smoking. He expressed the opinion that plaintiff should not work in the medical field due to her susceptibility to infections. He did not mention her mental status and, more importantly, did not state that plaintiff would be precluded from all work, just that in the medical field.

The Commissioner sent plaintiff for both consultative physical and mental exams with the first performed on January 20, 2003, by Dr. Rodolfo Gobunsuy. Plaintiff reported that she preferred to sleep in a recliner due to shortness of breath and that her doctor had told her to take a one year leave of absence because of her hypertension and asthma. The only physical abnormalities this physician observed were obesity, which he felt contributed to plaintiff's shortness of breath, and decreased air entry in the lungs without wheezing. He also reported plaintiff's blood pressure was

4

still out of control.  As the administrative law judge noted, however, despite the problems plaintiff and her physician have encountered with obtaining control of blood pressure, there has been no documentation of symptoms caused by the hypertension nor any evidence of end organ damage.

During her consultative psychological evaluation with Elizabeth Durham, M.A., on September 3, 2003, plaintiff displayed a fair attitude and was "somewhat" cooperative, but put forth little effort, especially on intelligence testing where she did not attempt to answer most questions and gave up easily.  Her scores, all between sixty and seventy, were considered invalid.  During her mental status exam, plaintiff interacted appropriately displaying a dysphoric mood and restricted affect. Memory and concentration were within normal limits.  She denied sleep or appetite problems and also denied suicidal ideation.  A diagnosis of depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified, was made and Ms. Durham assessed plaintiff's mental residual functional capacity, finding her "limited but satisfactory" in all areas except understanding, remembering and carrying out complex instructions, which was rated as "poor" (seriously limited but not precluded).

Just thirteen days after this evaluation, plaintiff was transported to the emergency room after threatening suicide.  Though combative, she did cooperate with mental status evaluation by Dr. Fink, a psychiatrist, who diagnosed major depressive disorder, single episode, moderate, not psychotic, dysthymia, anxiety disorder, not otherwise specified, and parent/child relational problem. Plaintiff signed out against medical advice with her father.  At the hearing, held three months after this incident, plaintiff testified she was not in treatment but was continuing to take antianxiety medicaton prescribed by Dr. Ayers.

5

In addition to Dr. Ayers, two state agency medical advisors submitted assessments of plaintiff's residual functional capacity and opined that she would be limited to a restricted range of light and sedentary work. A state agency psychologist who reviewed the evidence concluded that plaintiff's mental impairments were severe but not expected to last twelve months.

After considering the various findings, the administrative law judge concluded that, consistent with Dr. Ayers' September, 2003 opinion, plaintiff clearly could not perform her past work. Exertionally, he agreed with this physician's conclusion that she could lift only ten pounds occasionally, and less than this frequently. While he concluded that sitting was unlimited, as agreed by all those evaluating residual functional capacity and even by plaintiff herself, standing/walking was found to be limited to at least two hours per day. Posturally, the administrative law judge determined plaintiff could occasionally balance, stoop, kneel, crouch and crawl and never climb ladders, ropes or scaffolds. Environmentally, he found she could never work at heights, around dangerous machinery, in temperature extremes or around dust or fumes. These findings are consistent with the more restrictive of the state agency physicians' assessments and are consistent with the portions of Dr. Ayers' March 2003 assessment where he noted specific limitations. The administrative law judge did not give much weight to this physician's December 2002 opinion that plaintiff would be unable to work for at least twelve months as he found that unsupported by objective medical findings, both in the letter and in his reports, and inconsistent with the overall medical record.[3] It is also observed that other assessments and opinions from this physician within the twelve month period he claimed plaintiff was disabled are inconsistent with this opinion, at least

---

[3] See, 20 C.F.R. §§404.1527(d), 416.927(d).

6

with regard to physical problems. The administrative law judge's findings in this regard are clearly supported by substantial evidence.

Mentally, the administrative law judge determined that Ms. Durham's assessment was more persuasive than that from Dr. Ayers, again due to a lack of support for his findings and inconsistencies in the record. Ms. Durham's findings, on the other hand, are consistent with her examination observations and with plaintiff's lack of treatment for depression and/or anxiety, and are also consistent with the remainder of the record. The court concludes that the administrative law judge's findings as to plaintiff's mental residual functional capacity also have substantial support.

While plaintiff alleges significant limitations on her activities mainly due to her shortness of breath, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that her credibility was poor. In making this finding, he noted the instances where plaintiff did not give a good effort or cooperate with examiners as well as her continued smoking despite her pulmonary problems. He also noted indications in the record of noncompliance with taking medication as well as inconsistencies between plaintiff's symptoms and the evidence. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the

district court based on such Findings and Recommendation.  Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this   Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.


DATED: July 18, 2005

_____
MAURICE  G.  TAYLOR,  JR.
UNITED  STATES  MAGISTRATE  JUDGE